**FILED**

**JAN 29 2004**

**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MEDLINE INDUSTRIES, INC. an Illinois corporation,<br><br>Plaintiff,<br><br>v.<br><br>MEDLINE PRODUCTS COMPANY LIMITED, a Thailand company,<br><br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 03C 7255<br><br>Hon. Judge Conlon |

**DOCKETED**
**JAN 30 2004**

## NOTICE OF FILING

TO: Medline Products Company, Ltd.
Attention: Legal Counsel
85 Moo 4 Sai Asia-Chana Rd.
Na Mom
Na Mom, Songhkla 90310
Thailand

PLEASE TAKE NOTICE that on January 29, 2004, we filed with the United States District Court for the Northern District of Illinois Eastern Division BRIEF IN SUPPORT OF MONETARY RELIEF, a copy of which is attached hereto, and hereby served upon you.

Respectfully Submitted,

PATTISHALL, McAULIFFE, NEWBURY,
HILLIARD & GERALDSON

Dated January 29, 2004    By: /s/ Angela K. Steele
David C. Hilliard (1217496)
Janet A. Marvel (6201597)
Chad J. Doellinger (6274824)
Angela K. Steele (6278509)
311 South Wacker Drive, Suite 5000
Chicago, Illinois 60606
(312) 554-8000
Fax: (312) 554-8015

*Attorneys for Plaintiff Medline Industries, Inc.*

10

## CERTIFICATE OF SERVICE

I, Chad J. Doellinger, an attorney, hereby certify that on January 29, 2004, I caused a copy of the NOTICE OF FILING and BRIEF IN SUPPORT OF MONETARY RELIEF to be served upon:

> Medline Products Company, Ltd.
> Attention: Werner Gostner
> 85 Moo 4 Sai Asia-Chana Rd.
> Na Mom
> Na Mom, Songhkla 90310
> Thailand

This service was made via facsimile 011-66-074-210779 and Federal Express International Priority.

_/s/ Chad J. Doellinger_

FILED
JAN 2 9 2004
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MEDLINE INDUSTRIES, INC. )<br>an Illinois corporation, )<br>                                    )<br>            Plaintiff, )<br>                                    )<br>      v.                      )<br>                                    )<br>MEDLINE PRODUCTS COMPANY LIMITED, )<br>a Thailand company, )<br>                                    )<br>            Defendant. ) | Civil Action No. 03C 7255<br><br>Hon. Suzanne Conlon |

DOCKETED
JAN 3 0 2004

## BRIEF IN SUPPORT OF MONETARY RELIEF

**I.    Introduction.**

On October 14, 2003, plaintiff Medline Industries, Incorporated ("Medline") filed suit against Medline Products Company Limited ("defendant") alleging Trademark Infringement, Cybersquatting, Unfair Competition, Dilution, Deceptive Trade Practices, and Consumer Fraud and Deceptive Business Practices. Defendant did not respond. On December 18, 2003, this Court entered default judgment. Medline is entitled to statutory damages, defendant's profits and attorneys' fees.[1]

**II.   Facts.**

Medline is a privately-held national manufacturer and distributor of health care supplies and services. (Complaint, ¶ 4).[2] Since at least 1967, Medline has continuously used and promoted the inherently distinctive name and mark MEDLINE (the "MEDLINE Name &

---

[1] Medline is voluntarily waiving its claim for punitive damages.
[2] Because this Court entered default judgment on December 18, 2003, all facts in the complaint are deemed true. *See, e.g., Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983).

158023v4

Mark"). (Complaint, ¶ 6). The MEDLINE Name & Mark are widely recognized as indicating the high quality goods and services emanating from Medline. (Complaint, ¶ 14). Thus, the MEDLINE Name & Mark are famous and represent extraordinarily valuable goodwill owned by Medline. (Complaint, ¶ 14).

Medline has manufactured and distributed medical gloves under the MEDLINE Name & Mark for over thirty years. (Complaint, ¶ 7). In 2003, Medline invested $1.1 million in promoting medical gloves and sold approximately $130 million in medical gloves. (Complaint, ¶ 12). Medline's medical gloves are prominently featured on its Internet web site, which receives over two hundred thousand hits each day. (Complaint, ¶ 13).

Defendant, a manufacturer and exporter of medical gloves, began using the trade name Medline Products Company Limited ("the Infringing Trade Name") and registered the domain name <medline-pro.net> ("the Infringing Domain Name") long after the MEDLINE Name & Mark became famous. (Complaint, ¶¶ 15, 16). Defendant was using the Infringing Domain Name to attract and divert Internet users to its competing web site, which prominently displays the Infringing Trade Name. (Complaint, ¶¶ 21, 23).[3] Copies of several pages from defendant's web site are attached hereto as **Exhibit 1**.

Defendant's conduct is a deliberate attempt to trade on Medline's goodwill and confuse consumers. (Complaint, ¶¶ 24-26, 28). In addition to defendant's use of the Infringing Domain Name and Infringing Trade Name, defendant is copying features of Medline's product line, which further exacerbates confusion. For example, defendant displays nine types of specialized medical gloves at its web site: Latex Lightly Powdered Exam Gloves, Latex Powder Free Exam Gloves, Latex Powder Free Polymer Coated Exam Gloves, Vinyl Lightly Powdered Exam

---

[3] The bad faith use of the Infringing Domain Name only stopped after Medline contacted the registrar and informed them of this Court's December 18, 2003, permanent injunction.

-2-

Gloves, Vinyl Powder Free Exam Gloves, Synthetic Non-Latex Lightly Powdered Exam Gloves, Synthetic Non-Latex Powder Free Exam Gloves, Nitrile Powder Free Exam Gloves, and Nitrile Powder Free Disposable Gloves. (Complaint, ¶ 22).[4] All nine types of gloves sold by defendant are sold by Medline and can be viewed on Medline's web site. (Complaint, ¶ 22). Moreover, the color of each type of glove offered by defendant matches the color coding used by Medline for its specialized medical gloves. (Complaint, ¶ 22).

Defendant's infringing activities are highly profitable, with annual sales of $6,120,530.[5] Defendant's infringing efforts are also causing substantial actual confusion. An attached article illustrates this confusion: "Co-defendant Medline Industries, an Illinois corporation with a products company in Thailand . . . "[6] Also, many of Medline's suppliers and customers are confused, erroneously believing that defendant is affiliated with Medline. (Amdur Declaration, ¶¶ 3-4).[7] This confusion is damaging Medline's reputation because defendant's gloves are not undergoing acceptable inspection or quality control and thus are of inferior quality. (Amdur Declaration, ¶ 4). In fact, defendant's gloves have been placed on "auto-detention" by the United States Customs for quality concerns. (Amdur Declaration, ¶ 4). Similarly, many of Medline's vendors in Asia falsely believe that defendant is affiliated with Medline. (Amdur Declaration, ¶ 5). The confusion is compromising current and pending relationships, since vendors are unhappy that Medline is (apparently) competing with them by having its own factory, namely Medline Products. (Amdur Declaration, ¶ 6). Vendors are further troubled that Medline would accept such low quality goods. (Amdur Declaration, ¶ 7).

---

[4] *See* **Exhibit 1**.
[5] *See* defendant's Dun & Bradstreet Report (run on January 22, 2004), attached hereto as **Exhibit 2**.
[6] *See* June 8, 1999, Article attached hereto as **Exhibit 3**.
[7] A copy of the January 28, 2004, Declaration of Samuel Amdur is attached hereto as **Exhibit 4**.

### III. Legal Standard.

Under the Anti-Cybersquatting Consumer Protection ("ACPA"), Medline is entitled to statutory damages in the amount of "not less than $1,000 and not more than $100,000 per domain name, as the court considers just." 15 U.S.C. § 1117(d). Courts routinely impose the maximum award in situations like these. *See Graduate Management Admission Council v. Raju*, 267 F. Supp. 2d 505 (E.D. Va. May 19, 2003) (ordering defendant to pay $100,000 in statutory damages and attorneys' fees in a case where defendant is a competitor and defaulted). *See also Aztar Corp. v. MGM Casino*, No. 00-833-A, 2001 WL 939070 (E.D. Va. April 9, 2001) (same).

Medline is also entitled to defendant's profits. *See* 15 U.S.C. § 1117(a). Profits are awarded under three rationales: unjust enrichment, compensation, and deterrence. *See Roulo v. Russ Berrie & Co., Inc.*, 886 F.2d 931, 941 (7th Cir. 1989) (citations omitted). Under the Lanham Act, "the plaintiff is required to present proof of the infringer's gross revenues, with the burden on the infringer to establish any deductions for expenses or to demonstrate that the profits introduced by the plaintiff were . . . not attributable to infringing use under the Lanham Act." *Id.* at 940-41 (citations omitted). *See generally Louis Vuitton Malletier and Oakley v. Veit*, 211 F. Supp. 2d 567 (E.D. Pa. 2002) (awarding $100,000 in statutory damages under the ACPA and $1.5 million in actual damages for trademark infringement in a case where defendant defaulted).

In cases of deliberate infringement, treble damages, attorneys' fees, and prejudgment interest are appropriate. *See, e.g., Gorenstein Enterprises, Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 435-36 (7th Cir. 1989) (holding that "it might have been an abuse of discretion for the district judgment *not* to have awarded [plaintiff] treble damages, attorney's fees, and prejudgment interest" because the infringement was deliberate).

**IV. Argument.**

    A.    Medline is entitled to statutory damages for defendant's use of the infringing domain name.

Defendant had full knowledge of Medline's prior rights. Nevertheless, defendant used the Infringing Domain Name to intentionally divert consumers seeking Medline's web site to its own competing web site. More troubling, defendant's products are of inferior quality. This Court should therefore award the maximum in statutory damages. *See Louis Vuitton Malletier and Oakley v. Veit*, 211 F. Supp. 2d 567 (E.D. Pa. 2002) (awarding $100,000 per domain name in default case where defendant was a competitor selling inferior quality goods). *See also Aztar Corp. v. MGM Casino*, No. 00-833-A, 2001 WL 939070 (E.D. Va. April 9, 2001) (awarding $100,000 and attorneys' fees in a default case where defendant used a confusingly similar domain name to divert Internet users to its competing web site).

    B.    Medline is entitled to defendant's profits and prejudgment interest.

Defendant is a direct competitor using a nearly identical trade name. Defendant has copied various elements of Medline's product line. Defendant's deliberate infringing activities resulted in sales of $6,120,530 last year. Medline is therefore entitled to defendant's profits. *See, e.g., Roulo v. Russ Berrie & Co., Inc.*, 886 F.2d 931, 941 (7th Cir. 1989) (holding that an award of defendant's profits is proper to prevent unjust enrichment where the infringement was intentional and the competing products were substantially similar). *Cf. Women to Women, Inc. v. Woman to Woman Co.*, No. Civ. 02-52-P-H, 2003 WL 1741110 (D. Me. Apr. 1, 2003) (awarding plaintiff $1 million in defendant's profits in a case where defendant defaulted and then failed to answer a request for admission stating that it made $1 million in sales).

The award of profits is also necessary to protect the public: "In addition to the harm caused the trademark owner, the consuming public is equally injured by an inadequate judicial

-5-

response to trademark infringement." *Playboy Enterprises, Inc. v. Baccarat Clothing Co., Inc.*, 692 F.2d 1272, 1274 (9th Cir. 1982). Here, defendant is selling low quality medical gloves under Medline's famous trademark. The resulting actual confusion puts the public at risk. Thus, this Court should award profits to sufficiently deter defendant. *See Roulo*, 886 F.2d at 941 (holding that an award of defendant's profits is proper to deter defendant from continuing its infringing conduct).

Medline is also entitled to prejudgment interest on defendant's profits. *See Gorenstein Enterprises, Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 435-36 (7th Cir. 1989) (announcing a rule that prejudgment interest should be presumptively available and is particularly appropriate where the infringement was intentional). Since the prime rate is four percent,[8] Medline should be awarded $244,821.20 in prejudgment interest.

C.     Medline is entitled to treble damages.

The Seventh Circuit has instructed that an appropriate award must reflect the possibility the defendant may ignore the award of damages: "The defendant who has violated the plaintiff's rights is in effect a debtor of the plaintiff until the judgment is entered and paid or otherwise collected. At any time before actual payment or collection of the judgment the defendant may come up empty-handed. The plaintiff is an unsecured, uninsured creditor, and the risk of default must be considered . . . " *Gorenstein Enterprises, Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 436 (7th Cir. 1989). Here, defendant, a deliberate infringer, has already defaulted once. In addition, defendant is largely ignoring this Court's December 18, 2003, permanent injunction.[9] Given defendant's recalcitrant approach to this litigation, there is a strong likelihood that it will

---

[8] *See* January 28, 2004, Declaration of Cindy Bulthuis attached hereto as **Exhibit 5**. The *Gorenstein* Court announced that using the prime rate was an appropriate figure, but cautioned district courts not to use too low of a rate, which would undercompensate the victim. *See* 874 f.2d at 436-37.

[9] While defendant is no longer using the infringing domain, this is only because the registrar obeyed this Court's Order and transferred the Infringing Domain Name to Medline.

simply ignore any judgment entered against it. Thus, treble damages are appropriate. *See Gorenstein Enterprises, Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 436 (7th Cir. 1989) (holding that treble damages are proper when the infringement is deliberate).

        D.      Medline is entitled to costs and reasonable attorneys' fees.

Defendant's infringing conduct has been and continues to be committed intentionally with full knowledge of Medline's prior rights, in a deliberate attempt to trade on Medline's goodwill. Thus, this is an exceptional case and Medline is entitled to its costs and reasonable attorneys' fees. *See, e.g., Gorenstein Enterprises, Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 436 (7th Cir. 1989) (holding that costs and attorneys' fees are proper where the infringement is deliberate). *See generally* 15 U.S.C. § 1117(a). To date, Medline's attorney's fees have totaled $34,362.54. *See* Marvel Declaration, attached hereto as **Exhibit 6** detailing those expenses.[10]

---

[10] Medline was unable to comply with Local Rule 54.3 because defendant is in default and no attorney has filed an appearance in this action.

## V. Conclusion.

Defendant's willful and intentional exploitation of the MEDLINE Name & Mark is causing actual confusion, harming Medline's reputation, and generating a tremendous profit. In addition, the resulting confusion poses a serious threat to the consuming public. This Court's award must therefore be sufficient to put an end to the infringing activities: "[t]he trial court's primary function should center on making any violations of the Lanham Act unprofitable to the infringing party." *Roulo v. Russ Berrie & Co., Inc.*, 886 F.2d 931, 940-41 (7th Cir. 1989) (citation omitted).

Wherefore, Medline asks that this Court award it the following monetary relief:

1. Statutory damages in the amount of $100,000;

2. Trebled damages in the amount of $18,361,590 (the $6,120,530 in sales made last year multiplied by three);

3. Prejudgment interest in the amount of $244,821.20; and

4. Costs and attorneys' fees in the amount of $34,362.54.

Dated: January 29, 2004

Respectfully submitted,

PATTISHALL, McAULIFFE, NEWBURY,
HILLIARD & GERALDSON

By _____
David C. Hilliard (1217496)
Janet A. Marvel (6201597)
Chad J. Doellinger (6274824)
Angela K. Steele (6278509)
311 South Wacker Drive, Suite 5000
Chicago, Illinois 60606
(312) 554-8000

# SEE CASE FILE FOR EXHIBITS