# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | Geraldine Soat Brown |
|---|---|---|---|
| **CASE NUMBER** | 03 C 7255 | **DATE** | 7/7/2004 |
| **CASE TITLE** | Medline Industries, Inc. vs. Medline Products Company | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Report and Recommendation to Hon. Suzanne B. Conlon submitted herewith. This court respectfully recommends that Plaintiff's request of $45,492.27 in fees and costs be GRANTED IN PART and DENIED IN PART, in that the amount sought by Plaintiff should be reduced by $9,982.01, and Defendant should be ordered to pay $35,510.26 in attorneys' fees and costs incurred by plaintiff. Specific written objections to this report and recommendation may be served and filed within 10 business days from the date that this order is served. Fed. R. Civ. P. 72(a). Failure to file objections with the District Judge within the specified time will result in a waiver of the right to appeal all findings, factual and legal, made by this court in the report and recommendation. *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995). All matters relating to the referral of this action having been concluded, the case is returned to the assigned judge. /s/ Geraldine Soat Brown

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JUL 0 8 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | U.S. DISTRICT COURT CLERK | | |
| | Mail AO 450 form. | | docketing deputy initials | 23 |
| ✓ | Copy to judge/magistrate judge. | 2004 JUL -7 PM 5:34 | 7/7/2004 | |
| | | FILED-EOD | date mailed notice | |
| GR | courtroom deputy's initials | | GR | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MEDLINE INDUSTRIES, INC., an Illinois corporation,<br>Plaintiff,<br><br>v.<br><br>MEDLINE PRODUCTS COMPANY a Thailand company,<br>Defendant. | Cause No. 03 C 7255<br><br>Judge Suzanne B. Conlon<br>Magistrate Judge Geraldine Soat Brown<br><br>DOCKETED<br>JUL 0 8 2004 |

To: The Honorable Suzanne Conlon
United States District Court Judge

## REPORT AND RECOMMENDATION

Geraldine Soat Brown, United States Magistrate Judge

Plaintiff Medline Industries, Inc. has requested an award of its attorneys' fees and costs. [Dkt 10, 19.] In a prior Order, the District Judge awarded Plaintiff its attorneys' fees and costs pursuant to 15 U.S.C. § 1117(a), and referred the determination of the amount of attorneys' fees and costs to this court for a report and recommendation. [Dkt 13, 14.] Defendant has not objected to the amount sought by Plaintiff. For the following reasons, this court respectfully recommends that Plaintiff's request for attorneys' fees and costs be granted in part and denied in part as discussed herein, and that Defendant be ordered to pay $35,510.26 in attorneys' fees and costs incurred by Plaintiff.

23

**Background**

Plaintiff filed suit against Defendant, alleging claims of federal trademark infringement, cybersquatting, unfair competition, and dilution in violation of the Lanham Act, and claims under the Illinois Deceptive Trade Practices Act and Illinois Consumer Fraud and Deceptive Business Practices Act. [Dkt 1.] On December 18, 2003, the District Judge entered a default judgment against Defendant in favor of Plaintiff, and ordered Plaintiff to file prove-up documents to support its request for damages and lost profits. [Dkt 9.] On March 1, 2004, the District Judge approved Plaintiff's prove-up in part, awarding Plaintiff $100,000 in statutory damages but denying Plaintiff's request for more than $18,000,000 in profits, treble damages and prejudgment interest. [Dkt 14.] In addition, finding that Plaintiff's allegations (deemed true because of Defendant's default) established that the infringement was deliberate, the District Judge also awarded Plaintiff its reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1117(a), which provides that plaintiffs "shall be entitled . . . to recover . . . the costs of the action" and that prevailing parties may be awarded their reasonable attorneys' fees in "exceptional cases." (Order, March 1, 2004); 15 U.S.C. § 1117(a).

Plaintiff requested attorneys' fees and costs in the total amount of $45,492.27 and submitted Materials In Support Of Attorneys' Fees and Costs. [Dkt 19.] The Materials included a declaration by the attorney primarily responsible for the litigation of the case, Janet Marvel, who attached a schedule setting forth the total charges for each attorney, paralegal, and other professional support staff who performed work on the case. (Pl.'s Materials Supp. Att'ys Fees and Costs, Ex. 1, Declaration of Janet Marvel; Ex. 1(A), Schedule.) All of the fees and costs were incurred between August 2003 and March 2004. (*Id.*) Those fees consisted of 17.3 hours of work by Ms. Marvel, a

partner at the firm of Pattishall, McAuliffe, Newbury, Hilliard & Geraldson ("Pattishall, McAuliffe") at the rate of $380.00 per hour; 112.30 hours of work by Chad Doellinger, an associate at Pattishall, McAuliffe, at the rate of $180.00 per hour; 18.3 hours of work by Angela Steele, another associate at Pattishall, McAuliffe, at the rate of $170.00 per hour; 10.5 hours of work by two law clerks at Pattishall, McAuliffe (A. Iacullo and C. O'Brien), at the rate of $150.00 per hour; and 13.3 hours of work by three paralegals at Pattishall, McAuliffe (A. Al-Sakhria, C. Bulthuis, and E. Salvo), at the rate of $150.00 per hour. (*Id.*, Exs. 1(B) & 1(E), Monthly Billing Records.)[1] Ms. Marvel avers that the hourly rates charged are reasonable and customary for attorneys in the Chicago area who provide legal services for intellectual property matters. (Marvel Decl. ¶ 4.)

Also attached to Ms. Marvel's declaration is a listing of the expenditures (by type and billing month) incurred by Plaintiff in litigating this matter. (*Id.*, Exs. C & D, Expenditures Listings.) The expenditures were incurred between billing months September 2003 and March 2004 and totaled $11,961.27.[2] (*Id.*, Ex. D, Expenditures Listing.) The largest component of that total was computerized legal research expenses ($10,510.30). (*Id.*, Ex. C, Expenditures Listing.) In addition, there were courier and delivery charges, filing fees, duplicating, telephone and facsimile costs, travel costs, postage, and service of the complaint. (*Id.*) In her declaration, Ms. Marvel stated her belief

---

[1] Neither the billing records nor Ms. Marvel's declaration indicated the position titles of the various personnel identified above; the information was obtained from the law firm's website.

[2] The $11,961.27 figure is based on Exhibit D to the Declaration of Janet A. Marvel, which lists expenditures by month. However, the total expenditures set forth in Exhibit C, which lists expenditures by category, amounts to $11,960.94. The court was unable to determine the reason for the $0.33 discrepancy between the two charts; however, because the amount of the discrepancy is fairly insignificant, the court has relied on both exhibits (and the numbers contained therein) in determining the amount of expenditures.

that those charges were reasonable and comparable to customary charges for like work. (Marvel Decl. ¶ 5.)

The amount of costs and attorneys' fees to be awarded was referred to this court on March 2, 2004 for a report and recommendation. (Order, March 2, 2004.) On March 16, 2004, this court held a status hearing on Plaintiff's request for attorneys' fees and costs. (Order, March 16, 2004.) [Dkt 17.] No one appeared on behalf of Defendant. (*Id.*) At that status hearing, the court ordered that any response to Plaintiff's request for attorneys' fees and costs, or any objection to any amounts sought therein, must be filed by April 6, 2004. (*Id.*) This court further ordered that Plaintiff's counsel serve a copy of the court's order to Defendant by facsimile and by mail at Defendant's last known address, and file a certificate of service demonstrating compliance with that order. (*Id.*) Plaintiff filed a certificate of service indicating compliance with the court's order on March 18, 2004. [Dkt 18.] Defendant never filed any opposition to Plaintiff's request for attorneys' fees and costs.

As further discussed below, Plaintiff's counsel was subsequently ordered to provide additional information regarding its request for $10,510.30 in computerized legal research expenditures. (Order, May 27, 2004.) [Dkt 20.] Plaintiff's counsel filed a supplemental submission on June 4, 2004. [Dkt 21.] Defendant did not file a response, although the court had provided it time to do so. (Order, May 27, 2004.)

**Discussion**

A.  **Attorneys' fees requested by Plaintiff**

The court has reviewed the materials filed by Plaintiff in support of its request for attorneys' fees. Based on the materials submitted along with the declaration of Ms. Marvel, as well as a review

of the other pleadings and briefs that have been filed in this lawsuit, the court finds that the hourly rates charged and the hours expended are reasonable, with several exceptions that will be discussed further below.

With respect to the hourly rates charged by the attorneys in this case, ranging from $170.00 to $380.00 per hour, the court finds those rates to be reasonable, as they do not appear to be in excess of the rates charged by other attorneys in the Chicago area performing work on intellectual property matters. *See, e.g. Microsoft Corp. v. T & S Internatl. Corp.*, No. 03 C 4219, 2004 WL 407008 at *1 (N.D. Ill. Mar. 3, 2004) (Darrah, J.) (awarding attorneys' fees in Lanham Act case based on hourly rates of $265.00 to $450.00 per hour).

However, the hourly rate of $150.00 charged by the paralegals and law clerks working on the case is excessive. Courts in this district have recently allowed hourly rates ranging from $50.00 to $126.00 for paralegal and law clerk work. *See, e.g., In re Amister Copyright Litig.*, No. 01 C 8933, 2003 WL 2002764 at *6 (N.D. Ill. April 15, 2003) (Aspen, J.) (allowing hourly rate of $126.00 for paralegals); *Holland v. Barnhart*, No. 02 C 8398, 2004 WL 419871 at *2 (N.D. Ill. Feb. 3, 2004) (Aspen, J.) (reducing rate charged by paralegal to $50.00 per hour); *Embry v. Barnhart*, No. 02 C 3821, 2003 WL 22478769 at *3 (N.D. Ill. Oct. 31, 2003) (Brown, M.J.) (finding hourly rate of $95.00 appropriate for law clerk and paralegal). *See also Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1106 (N.D. Cal. 2003) (stating that the $70.00 hourly rate requested for time spent by paralegal was reasonable).

In this case, no information has been submitted regarding the education, training or experience of those paralegals and law clerks to justify a billing rate close to that of the associate attorneys. However, certain of the work done by paralegals and law clerks in this case was

somewhat advanced, such as investigating how to achieve service of process on a defendant in Thailand. Thus, a rate at the higher end of the scale is justified. Given that Defendant did not object to the $150.00 hourly rate charged by the paralegals and law clerks, the court will allow an hourly rate of $125.00, thereby reducing the rate charged by the paralegals and law clerks by $25.00 per hour. Because the paralegals and law clerks spent a total of 23.8 hours on this case (Marvel Decl., Ex. B, Billing Records), the total amount sought by Plaintiff should be reduced by $595.00 ($25.00 x 23.8 hours).

In addition, some of the attorneys' time listed is excessive in light of the tasks performed. Specifically, the approximately five hours (amounting to approximately $958.00) spent by three attorneys to research and prepare filings relating to the District Court's voluntary Lanham Act mediation program is excessive. (*Id.*, Ex. B, Billing Records, Invoices dated Dec. 17, 2003 and Jan. 31, 2004 .) Plaintiff's attorneys could not have required significant research about the program, which has been in place in the Northern District of Illinois since 1996. Attorneys experienced in handling intellectual property cases in this District should be familiar with the program. All that is required of a plaintiff's counsel by the Local Rules is to notify his or her client and the defendant (or his or her counsel) of the availability of the program, to file a certificate indicating that the notification has been made, and later to file a notice of whether the clients have decided to engage in mediation. *See* Local Rule 16.3 and Appendix B: Procedures for Voluntary Mediation Program for Lanham Act Cases. Plaintiff's filings relating to the program were minimal. The first filing was a certificate of service. [Dkt 4.] The second filing was limited to stating that Defendant had never appeared to defend this action and that therefore no mediation could be held. [Dkt. 7.] The entire activity should not have taken more than two hours by the associate who performed most of the

work, Ms. Steele. At her hourly rate, that amounts to $340.00. Accordingly, the attorneys' fees should be reduced by an additional $618.00 ($958.00 - $340.00).

Finally, the court recommends that all of the attorneys' fees incurred by Plaintiff after December 18, 2003 be reduced in order to appropriately and fairly reflect Plaintiff's overall success and the results obtained in this suit. As mentioned above, on December 18, 2003, the District Judge issued an order granting Plaintiff's motion for entry of default judgment and ordering Plaintiff to file prove-up documents. (Order, Dec. 18, 2003.) Plaintiff then filed its prove-up documents, requesting $100,000 in statutory damages, $244,821.20 in prejudgment interest, and over $18,000,000 in treble damages based on profits of $6,120,530, as well as its attorneys' fees and costs. *See* Pl.'s Br. Supp. Monetary Relief at 8. [Dkt 10.] The District Judge granted Plaintiff's request for $100,000 in statutory damages and reasonable attorneys' fees and costs, but denied Plaintiff's request for over $18,000,000 in prejudgment interest, profits and treble damages, reasoning that Plaintiff "failed to proffer proof of sales" and instead "merely provide[d] a Dun & Bradstreet report that states [Defendant's] annual sales," which was "nothing more than unsubstantiated hearsay." (Order, Mar. 1, 2004 at 2.) Thus, while Plaintiff was successful in obtaining a default judgment in this case, it was largely unsuccessful in obtaining the monetary relief it sought. Given the District Judge's ruling on that issue, Plaintiff is not entitled to all of its fees incurred in its effort towards securing $18,000,000 in monetary relief. *See Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983) (holding that "the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney fees" so that "where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relating to the results obtained"); *Sweetzel, Inc. v. Hawk Hill Cookies, Inc.*, No. CIV. A. 95-2632, 1996 WL 434012 at *2 (E.D. Pa. July 30, 1996)

(Shapiro, J.) (reducing plaintiff's fee award due to plaintiff's "limited recovery" in Lanham case, where plaintiff recovered substantially less than its original demand); *Childress v. Taylor*, 835 F. Supp. 739, 743 (S.D.N.Y. 1993) (reducing fee award in copyright infringement case to reflect plaintiff's only partial success, where plaintiff sought to collect over $170,000 but obtained judgment for less than $43,000); *Washington v. Philadelphia County Ct. of Common Pleas*, 89 F.3d 1031, 1042 (3d Cir. 1996) (stating in civil rights case that attorney fees should only be awarded to the extent the litigant was successful and "[t]he amount of damages awarded, when compared with the amount of damages requested, may be one measure of how successful the plaintiff was"); *Vieques Conservation & Historical Trust, Inc. v. Martinez*, 313 F. Supp. 2d 40, 47 (D.P.R. 2004) (reducing attorney fee award under the Endangered Species Act where case was settled without much opposition and for mere fraction of what plaintiffs were seeking to recover, in order to "more appropriately and fairly reflect the degree to which the plaintiffs' efforts resulted in the outcome they sought").[3] For this reason, the court recommends that Plaintiff be awarded only half of the $13,508.00 it incurred in attorneys' fees between December 18, 2003 and March 16, 2004 in attempting to obtain over $18,000,000 in monetary relief. The court believes that such a reduction ($6,754.00) will more appropriately and fairly reflect the degree to which Plaintiff's efforts resulted in the outcome it obtained.

---

[3] It should be noted, however, that none of these cases stand for the principle that the attorney fees to be awarded must be proportionate to the amount of damages recovered. *See, e.g., Hensley*, 461 U.S. at 435, 440 (holding that partial success is not a ground on which to reduce fees if the plaintiff received "excellent results" or the unsuccessful claim cannot easily be segregated from the claims on which the plaintiff prevailed); *Washington*, 89 F.3d at 1042, 1042 n. 8 (stating that a "[l]ack of success . . . does not arise merely because the fees incurred far exceed the amount of the recovery" and a court "cannot adjust counsel fees to maintain a certain ratio between the fees and damages"); *Sweetzel, Inc.*, 1996 WL 434012 at *1 (explaining that the Third Circuit "has rejected limiting attorney fees to retain proportionality to damages").

However, the court recommends that Plaintiff be awarded all of the fees it incurred between the inception of this case and the time it secured the default judgment on December 18, 2003 (with the two exceptions of $595.00 and $618.00 set forth above), as Plaintiff was fully successful in that endeavor and the fees requested for that period appear reasonable.[4]

Thus, in summary, Plaintiff should be awarded a total of $25,564.00 in attorneys' fees ($20,023.00 in fees incurred through December 18, 2003, plus $6,754.00 in fees incurred between December 18, 2003 and March 16, 2004 (after the amount has been divided in half), minus the $595.00 and $618.00 reductions set forth above).[5]

---

[4] *See Microsoft Corp.*, 2004 WL 407008 at *1 (awarding plaintiff its fees in Lanham Act case involving default judgment where attorneys submitted billing records, hourly rates, and declaration that rates charged were reasonable); *Taylor Made Golf Co. v. Carsten Sports, Ltd.*, 175 F.R.D. 658, 664 (S.D. Cal. 1997) (same); *Discovery Comms., Inc. v. Animal Planet, Inc.*, 172 F. Supp. 2d 1282, 1291-92 (C.D. Cal. 2001) (same); *Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 585-86 (E.D. Pa. 2002) (awarding plaintiffs their attorneys fees and costs under 15 U.S.C. § 1117 in case involving default judgment where it was "evident from the statements in the declaration that the hours spent on th[e] case were necessary and the billable rate fair").

[5] A few entries relating to the Reply filed by Plaintiff bear additional mention, although they do not warrant additional reduction in the fees to be awarded. Specifically, approximately nine hours were spent by two attorneys preparing the Reply regarding Plaintiff's Brief in Support of Monetary Relief, even though Defendant never filed any response or objection to Plaintiff's Brief in Support of Monetary Relief. (Marvel Decl., Ex. B, Billing Records, Invoice dated March 11, 2004.) That amount of time, at first glance, seemed excessive considering the fact that no response was ever filed by Defendant, and considering the brevity of the Reply. *See* dkt 12. However, the records reflect that legal research was performed in conjunction with the Reply, and the Reply discusses authorities relating to Plaintiff's argument that by not responding Defendant had conceded the entitlement to monetary damages. A Declaration was also filed with the Reply. (Marvel Decl., Ex. B, Billing Records.) Those facts, combined with the fact that Defendant failed to object to these charges, leads the court to conclude that the amount awarded for preparing the Reply need not be further reduced.

## B. Costs requested by Plaintiff

In addition, Plaintiff has requested $11,961.27 in costs for the following items: computerized legal research, courier and delivery services, filing and service of the complaint, duplicating, telephone usage, postage, facsimile usage, and travel. (Marvel Decl., Exs. C & D, Expenditures Listings.) Under the Lanham Act, the term "costs of the action" as referenced in § 1117(a) is not defined. *People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 370 (4th Cir. 2001); *see also* Terence P. Ross, *Intellectual Property Law: Damages and Remedies § 8.09 COSTS* (2004) (stating that 28 U.S.C. § 1920 and Federal Rule of Civil Procedure 54(d) define the full extent of a court's power to shift costs absent express statutory authority to go further, which "poses a distinct problem in intellectual property litigation since none of the statutory authorizations [such as the Lanham Act] 'go further'" (quotations omitted)). The case law is clear, however, that "costs" under § 1117(a) include, at a minimum, those costs specifically enumerated in 28 U.S.C. § 1920. *See, e.g., PETA*, 263 F. 3d at 370-71. The question is whether other costs besides those listed in § 1920 may be awarded. In *PETA*, the Fourth Circuit indicated that courts have the discretion to award costs besides those included in § 1920. Specifically, the Court stated:

> [T]he award of . . . costs under the Lanham Act is committed to the sound discretion of the Court, based on the equities of each particular case. . . . The district court was required to award [the plaintiff], as the prevailing party, no more than those costs required by § 1920. Any additional award of costs was within its sound discretion .
> . . .

263 F.3d at 371 (internal quotation omitted) (affirming district court's decision to limit costs to those listed in § 1920). *See also Somat Corp. v. Somat Corp.*, No. 90 C 4943, 1993 WL 75155 at *4 (N.D. Ill. Mar. 15, 1993) (Plunkett, J.) (stating in Lanham Act case that "when a party attempts to recover for costs not specifically listed under section 1920, the court should carefully use its discretion to

determine the propriety of awarding those costs"); *Dick's Sporting Goods, Inc. v. Dick's Clothing & Sporting Goods, Inc.*, 12 F. Supp. 2d 499, 501 (D. Md. 1998) (denying various costs incurred as they did not fall into a category enumerated by § 1920 and because "the equities of th[e] case d[id] not warrant departure from the guidelines of the statute"). Thus, the court has the discretion to award costs beyond those specifically enumerated in § 1920, and that discretion should be used carefully.

### 1. *Computerized Legal Research Expenses*

Of the $11,961.27 requested in costs, $10,510.30 was for computerized legal research. (Marvel Decl., Ex. C, Expenditures Listing.) Courts in this District have held that computerized legal research expenses may be reimbursable, so long as reasonably incurred, although as part of an attorneys' fee award rather than as costs. *See, e.g., Harman v. Lyphomed, Inc.*, 945 F.2d 969, 976 (7th Cir. 1991) (holding that computer-assisted research fees, so long as reasonably incurred, are compensable); *In the Matter of Continental Illinois Sec. Litig: Steinlauf v. Continental Illinois Corp.*, 962 F.2d 566, 570 (7th Cir. 1992) (holding that attorneys should have been allowed to bill expenses associated with the use of a computerized legal research service); *A T & T Corp. v. Synet, Inc.*, No. 96 C 0110, 1998 WL 60837 at *5 (N.D. Ill. Feb. 6, 1998) (Coar, J.) (finding that the explanation for computer expenses incurred by plaintiff in Lanham Act case was adequately reflected in attorney's fees and that the expenses were compensable); *Somat Corp.*, 1993 WL 75155 at *5 (not allowing computerized legal research expenses in Lanham Act case based on finding that such costs were more properly classified as attorney's fees, which had been denied). Thus, the expenses incurred by Plaintiff for computerized legal research may be awarded, provided that they are reasonably incurred, as part of its attorneys' fees rather than costs.

Initially, the court was unable to determine whether the computerized legal research expenses were reasonably incurred based on the materials filed by Plaintiff in support of its request for costs. Although it was clear from the billing records that "research" had been performed, it was not clear when those research tasks involved a computerized research service. Nor was it clear in several instances what the research had entailed. (Marvel Decl., Ex. B, Billing Records.) To address this problem, as mentioned previously, Plaintiff was ordered to provide a supplemental submission regarding its computerized legal research expenses to show that the amounts expended were justified and reasonable, particularly because the case involved a default judgment. (Order, May 27, 2004.) Plaintiff provided an additional submission, asserting that this case "required significantly more legal research than a typical case involving a default." (Supp. Decl. of Janet Marvel ¶ 5.) Plaintiff went on to explain that Defendant is a Thailand corporation and that research was necessary to determine how to effectuate service under both United States and Thai law. (*Id.* ¶ 6.) Plaintiff further asserted that, because of the default, it was unable to take discovery in this case and "had to rely exclusively on computerized legal research to investigate defendant and its business to ascertain the full scope of defendant's infringement and profits." (*Id.* ¶ 7.) Finally, Plaintiff asserted that the computerized legal research expenses were also justified and necessary because of "the complex legal and factual issues unique to this case." (*Id.* ¶ 8.)

With that information, the court re-reviewed Plaintiff's billing records, and noted that a large part of the research conducted did appear to relate to the investigation of Defendant and the service of process in Thailand. *See* Marvel Decl., Ex. B, Billing Records, Invoices dated Sept. 15, 2003 through Nov. 14, 2003. Based on Plaintiff's explanations, the court finds that research was reasonably incurred. The remainder of the research related to Plaintiff's various filings in this case,

such as its motion for entry of default judgment and its brief in support of monetary relief. *See id.*, Ex. B, Billing Records, Invoices dated Dec. 17, 2003 through March 11, 2004. The court finds that the amounts expended for the research relating to the securing of the default judgment are reasonable, but the amounts expended for the research relating to the procurement of monetary relief are excessive based on Plaintiff's limited success in obtaining that relief, as discussed above. Accordingly, for the same reasons discussed above, the court recommends that the $7,275.36 in computerized legal research expenses incurred through December 18, 2003 (when default judgment was entered) be awarded, but the $3,234.94 in computerized legal research expenses incurred after December 18, 2003 be reduced by half, that is, by $1,617.47. (*Id.*, Ex. 1(C), Expenditures Listing.) Thus, the court recommends that a total of $8,892.83 ($10,510.30 - $1,617.47) in computerized legal research expenditures be awarded.

### 2. *Other Expenses*

As for the remaining items included in Plaintiff's list of costs (courier and delivery charges, filing and service fees, duplicating costs, telephone costs, postage charges, facsimile charges, and travel expenses), the court will deduct an additional $397.54, as it will not award Plaintiff the costs incurred for facsimile, courier and delivery, postage, telephone or travel. Those costs are not permitted under § 1920, and Plaintiff has not provided this court with any factual basis upon which to exercise its discretion and award those costs in this case. *See PETA*, 263 F.3d at 371. *See also Angevine v. WaterSaver Faucet Co.*, No. 02 C 8114, 2003 WL 23019165 at *7, 9-10 (N.D. Ill. Dec. 23, 2003) (Brown, M.J.) (not awarding costs incurred for facsimile usage, express mail, travel, or telephone usage under § 1920). The costs incurred for filing and serving the complaint and for

duplicating will be permitted.

## Conclusion

For the foregoing reasons, this court respectfully recommends that Plaintiff's request of $45,492.27 in fees and costs be granted in part and denied in part, in that the amount sought by Plaintiff should be reduced by $9,982.01,[6] and Defendant should be ordered to pay $35,510.26 in attorneys' fees and costs incurred by Plaintiff. Specific written objections to this report and recommendation may be served and filed within 10 business days from the date that this order is served. Fed. R. Civ. P. 72(a). Failure to file objections with the district court within the specified time will result in a waiver of the right to appeal all findings, factual and legal, made by this court in the report and recommendation. *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

Geraldine Soat Brown
United States Magistrate Judge

July 7, 2004

---

[6] The deducted amount of $9,982.01 represents a deduction of $7,967.00 in attorneys' fees ($595.00 + $618.00 + $6,754.00), plus a deduction of $1,617.47 in computerized legal research expenses, plus a deduction of $397.54 in costs.